As originally filed, the "declaratory judgment" complaint of plaintiff/appellant M M Investment Company ("M M") was based upon a dispute between M M and defendant/appellee Regency Oaks Apartments ("Regency") over the interpretation and application of the reservation of an easement in M M's lease and the grant of an easement in Regency's deed.[1] M M's lessor and Regency's grantor are one and the same person, Gordon Davis. The easement in question in both instruments relates to the same 30-foot-wide and 200-foot-long strip of land across M M's leased property and provides one of two means of access to Regency's property, which adjoins the property leased to M 
M.
By amendment, M M added defendant/appellee Alabama Power Company ("APCo") as a party. As amended, the complaint sought a declaration of the rights of the respective parties with regard to the manner and extent of the defendants' usage of the easement, claiming that Regency's placement and construction of a 24-foot-wide roadway, with bordering 7-inch-high lateral concrete curbing, exceeded the contemplated use of the easement; that APCo exceeded its easement rights by installing underground electrical cables; and that both defendants violated their authority by constructing permanent "improvements" upon the ingress and egress easement, to the total and unreasonable exclusion of M M's use of this portion of its leased property.
The trial court granted Regency's motion for partial summary judgment, declaring that the right reserved and granted in the lease and deed created a valid and enforceable easement for the general purposes of ingress and egress by Regency and its tenants over the 50-foot strip across M M's leased property. Although it was *Page 593 
made final by a Rule 54(b), A.R.Civ.P., order, this partial summary judgment was not appealed.
After denying M M's motion for summary judgment, the trial court granted Regency's and APCo's separate motions for summary judgment. M M appeals. We affirm as to APCo; we reverse as to Regency.
Because our holding is based primarily on the error of the trial court in its misapplication of the law to certain undisputed facts, a detailed recital of the evidence in support of, and in opposition to, the summary judgment motions is not necessary. Rather, we will recite only so much of the evidence as is essential to an understanding of the relevant principles of law and their application to the triable issues of fact.
We begin by setting forth the easement provisions of the two documents in question. We quote from the lease between Davis, as lessor, and M M, as lessee:
 "The Lessor herein reserves and retains an easement for the purpose of ingress and egress over, across and upon a strip of land fifty feet in width extending from the north side of 15th Street across the east side of said property to the north line of the property herein leased. This easement is for the purpose of free access over and across said property from 15th 'Street to the property owned by Lessor north of the property herein leased and may be improved by Lessor in any manner he sees fit."
We quote from the deed from Davis, as grantor, to Regency, as grantee:
 "ALSO, a permanent easement with the right of ingress and egress and travel over and upon a strip of land fifty (50) feet in width lying along the north boundary of 15th Street and running back of uniform width a distance of 200 feet to the south line of the property hereinabove described and conveyed; said easement being more particularly described as follows:"
A close reading of these easement provisions discloses two essential differences in the separate documents: 1) The easement in the lease is an interest reserved in the lessor, who continues to own the fee, while the easement in the deed is an interest in a portion of the leased property, granted by the owner to the grantee (the new owner) of the property described in the deed; and 2) the last clause of the easement language in the lease, "may be improved by the lessor in any manner he sees fit," is not contained in the easement language in the deed.
It is reasonably clear from the record, and from the briefs of counsel, that the trial court accepted and applied the principles of law advanced by Regency and APCo. They contend that their rights to the use of the easement spring from the easement language of the lease. In other words, the appellees do not contend (indeed, they tacitly concede otherwise) that the simple ingress and egress easement provided in the deed would not authorize them to arbitrarily exclude M M from such reasonable use of the 50-foot strip as would not interfere with Regency's and APCo's reasonable use of the easement. M M asserts that Regency's and APCo's position, as accepted by the trial court, is tantamount to interpreting the language of the lease ("may be improved by the lessor in any manner he sees fit") so as to convert the easement into a grant of the fee. Because the easement language of the lease inures to the benefit of Regency, as grantee of the Regency property, Regency and APCo contend (and this contention formed the basis of the trial court's ruling) that they are relieved from the application of any standard of reasonableness in their use of the easement.
M M, on the other hand, conceding Regency's right to use the 50-foot strip as a means of ingress and egress across the leased property to and from the Regency Apartments, contends that Regency must look to its deed for the nature and extent of the easement granted by Davis across his property, of which M 
M, under the terms of the lease, has the exclusive right of possession subject only to the easement granted by Davis in his deed to Regency. See Magna, Inc. v. Catranis, 512 So.2d 912 *Page 594 
(Ala. 1987), (holding, under facts where the nature and extent of the easement differ materially from those of the easement in the instant case, that the dominant estate had the right of exclusive use of the easement).
These opposing positions can be better understood and appreciated in the factual context of Regency's actual use of the 50-foot-wide strip of property. Over M M's protest, Regency constructed a 200-foot-long and 24-foot-wide paved road, with lateral concrete curbing, along the western half of the east 50 feet of M M's leased property. This particular placement of the 24-foot roadway on the 50-foot-wide easement strip, along with the 7-inch-high concrete curb that borders the road's west side, effectively prevents M M from using the property for any purpose.
According to Regency's own testimony, there was no necessity, either technically or economically, for placing the road and curb on the west side of the 50-foot-wide easement as opposed to placing it along the east side of the property; placing it on the east side would have given M M parking spaces for its "fast food" customers. Before Regency's exclusive use of the easement, this entire 50-foot strip was used by M M for parking. One of the Regency partners testified that the roadway and curb were purposefully placed as the most effective way of preventing M M from interfering with Regency's use of the easement.
If we assume, as argued by the parties and as accepted by the trial court, that the easement language in the lease ("may be improved by the lessor in any manner he sees fit") is broader and authorizes greater discretionary use of this easement by the dominant estate than the more restrictive language of Regency's deed, this greater authority inures not to Regency but to the lessor, Davis. Under ordinary circumstances, there is no difference between a right of easement by way of a reservation and such right by way of a grant. To so contend in the instant context, however, loses sight of the material distinction between a reservation of an easement in a lease and an outright grant of an easement in a conveyance of the fee. If the reservation of the right of easement is broader than the subsequent grant of the right of easement with respect to the same property, the difference in the nature and breadth of the two respective rights is retained in the grantor.
Here, whatever right of easement Davis, as owner of the fee, reserved in his lease, he still retains subject only to the right of easement granted in his conveyance of the fee in the Regency property. If there is a difference in the right reserved in the lease and the right granted in the deed, that difference inheres in Davis, not in Regency.[2] Indeed, all of the cases cited by the appellees in support of their reliance on the easement reservation language in the lease are inapposite because they deal with conveyances of the fee and not with leases.
Even if we assume that the "right to improve" creates an appurtenance, as contended by Regency, the question remains: Did Regency acquire that right as an appurtenance toits property or is it a right retained by the lessor? Again, the distinction between a lessor and a grantor, in the instant context, answers the question in favor of the lessor. ThompsonOn Real Property describes the nature of an easement appurtenant:
 "Section 322. The nature of an easement appurtenant. An appurtenant easement is incapable of existence separate and apart from the particular land to which it is annexed. So, it cannot be conveyed by the party entitled to it separate from the land to which it is appurtenant. It can be conveyed only by a conveyance of such land. It inheres in the *Page 595 
land and cannot exist separate from it; nor can it be converted into an easement in gross."
The right to improve the easement over M M's leased property does not inhere in the Regency property, for that right is fully capable of being exercised independently of the Regency property. This does not mean that Regency, through its own easement grant, is not authorized to make such reasonable usage of the easement as comports with its ingress and egress purpose, including the construction of a modern roadway, bordered by lateral curbing, to protect against unauthorized and unreasonable intrusion. Indeed, improvements of this nature fall within the express purpose of the right of easement contained in its deed. But, here again, this right must be reasonably exercised in such a manner as will accommodate M 
M's right of possession under its lease. Duke v. Pine CrestHomes, Inc., 358 So.2d 148 (1978).
The applicable principles of law were laid down in the early case of Long v. Gill, 80 Ala. 408 (1885):
 "The terms of the grant, considered in reference to the locality and situation of the premises, do not operate to pass a right to the unobstructed use of the entire lot described — such as a right of way over a street or a strip of land appropriated to the purposes of a street — but to the convenient use of so much as may be necessary to the purposes intended by the grant. . . .
 ". . . From the circumstances and the situation of the premises, evidently the intention was to provide a mode of ingress and egress for the purpose of receiving and delivering goods and other articles of use at the rear end of the store. The easement extends to the convenient use of the land for vehicles or conveyances, such as may be reasonably required. The complainant therefore is entitled to a way reasonably
convenient for the employment of conveyances, such as are usually and generally employed in transporting goods to and from stores. But the owner of the soil is entitled to all the rights, benefits, and privileges of ownership, consistent with and subject to such easement. . . .
 ". . . As the City Court adjudged the rights of complainant in unison with these views, the case is reduced to a question of fact — whether the obstruction abridges or impedes the reasonable and convenient use of the right of way for the purposes intended, and for which it was granted?" (Emphasis supplied.)
Long v. Gill, supra, 80 Ala. at 409-10.
Using Long as its authority, A.L.R.2d summarizes the rule:
 "A grant or reservation of a right of way 'over' a particular area, strip, or parcel of ground is not ordinarily to be construed as providing a way as broad as the ground referred to."
28 A.L.R.2d 265, § 7.
Regency was granted a permanent easement with the right of ingress and egress and travel over and upon a strip of land 50 feet in width and 200 feet in length. Regency exercised its right by constructing two 7-inch-high concrete curbs 200 feet long and then paved the 24-foot-wide area between the curbs as a roadway. Unquestionably, it had the right, under its grant, to do this. Having made its decision, however, that only approximately one-half of the 50-foot strip was needed to accomplish the purposes for which the easement was granted, did it also have the unilateral and arbitrary right to locate the roadway and curbing in such a manner as to preclude M M's reasonable use of the remaining one-half of the 50-foot strip?
Because of Regency's own testimony that the sole reason for its placement of the roadway was to insure against M M's interference with Regency's use of the easement, we are almost persuaded that the question can be answered in M M's favor as a matter of law. We decline to so hold, however, because, notwithstanding the weight and quality of this evidence against Regency's position, there may be other evidence that creates a triable issue of fact with respect to the application of the "reasonableness" standard. Therefore, as to Regency, the judgment is reversed and the cause is remanded for further proceedings. *Page 596 
For the trial court's guidance in fixing an easement by judicial decree, see Looney v. Blackwood, 224 Ala. 342,140 So. 400 (1932).
We turn now to the propriety of the summary judgment in favor of APCo. It is settled law that the right of easement carries with it the right of a utility company to construct and maintain its facilities upon and over the property within the confines of the easement, unless the exercise of this right is so arbitrary as to unnecessarily and unreasonably interfere with the owner's right of reasonable use of his own property. See Alabama Power Co. v. Taunton, 465 So.2d 1105 (Ala. 1984).
Applying this rule of reason, we find that M M's claim that APCo violated its right of easement by installingunderground electrical cables to service the Regency apartments and its claim that APCo acted arbitrarily in locating and constructing a twin-pole electrical transformer bank on the easement are unsupported by the law and the evidence. Therefore, as to APCo, the judgment is affirmed. We note, however, that our affirmance of the judgment in favor of APCo does not preclude the trial court, either on its own motion or at the instance of either of the remaining parties, from bringing APCo back into the case as a party if the relocation of the APCo facilities is essential to the appropriate adjustment of the equities among the parties.
We are constrained to conclude with an additional observation: We do not perceive how the issue to be resolved on remand of this cause can be adjudicated without necessarily affecting the interest of Gordon Davis, the owner of the leased premises. Indeed, his interest in preserving whatever rights were reserved in the easement language of the lease of the M 
M property and not granted in the easement language of the deed to the Regency property, if any, is a substantial interest that should not be adjudicated in a proceeding to which he is not a party. Therefore, the trial court would be well advised to invoke Rule 19, A.R.Civ.P., and treat Gordon Davis as an indispensable party, to be aligned as a party plaintiff or as a party defendant according to the position stated in his answer.
AS TO ALABAMA POWER COMPANY, AFFIRMED.
AS TO REGENCY OAKS APARTMENTS, REVERSED AND REMANDED.
TORBERT, C.J., and SHORES, ADAMS and STEAGALL, JJ., concur.
[1] Although M M and Regency are successors-in-interest to prior transferees, for the sake of convenience, they are referred to herein, when applicable, as "lessee" and "grantee."
[2] We emphasize that we are not to be understood as holding that the distinction between the easement language of the lease and the easement language of the deed is a material difference. Whether the "right to improve" would have been impliedly conveyed by the inclusion of the word "appurtenance" in the deed from Davis to Regency so as to create the right in Regency to arbitrarily use the property to the total exclusion of M 
M, is a question we need not decide here.