These four consolidated cases involve claims of conspiracy to interfere with business and contractual relations, and all four arise out of a single set of operative facts.
The plaintiffs, Bobby and Etta "Cricket" Davis, operated a combination gas station/grocery store in a building owned by one of the defendants, Hazel Fossett. Defendant Cooper Oil Company, Inc., owned the gasoline tanks and pumps at the store and supplied the gasoline sold there. Defendant Paul Smith is the president of Cooper Oil and admittedly was acting as the agent of Cooper Oil at all times pertinent to this litigation. The final defendant, Neal Fossett, is Hazel's nephew. The plaintiffs claim that these four parties conspired to drive them out of their business so that Neal could take it over.
The facts are sharply disputed, but the basic facts are as follows. When the plaintiffs, on several occasions, did not pay Cooper Oil for gas they had sold at the station, Smith ordered the pumps at the station locked up until they paid their account. When Hazel noticed that the pumps were locked, she sent Neal to talk to the Davises and find out why the pumps were locked. Hazel also asked Neal to tell the Davises that she was upset because they were renting X-rated video tapes as a part of their business.
During the course of discussions with the Davises, Neal asked if they would be interested in selling the business. In the meantime, the Davises paid their debt to Cooper Oil and threatened to change gasoline suppliers. After several days, Neal and the Davises entered into negotiations for the sale of the business, but no agreement was reached. Smith was present at the negotiations, apparently at the Davises' invitation, and when the negotiations broke off he contacted Hazel. She said that she wanted the Davises out of the store, and Smith asked if she knew how she could have them evicted. Apparently, Hazel was not aware that the Davises could be evicted and she did not know how to go about having them evicted. Smith offered to contact his attorney about taking action. Although Hazel testified that it was her idea to have the Davises evicted, Smith was the one who called the attorney and who initiated the eviction on Hazel's behalf. Eviction procedures were begun by Smith's attorney, and Smith then locked the gas pumps again, even though the Davises did not owe him any money at that time.
After the pumps were locked, Neal again entered into negotiations with the Davises to buy the business. No agreement was reached, and the Davises, after receiving a second eviction notice, sold their fixtures and inventory, moved out of the store, and filed this action for conspiracy, claiming that the defendants were guilty of unwarranted interference with their business and contractual relations. They alleged that Neal, Hazel, Smith, and Cooper Oil had all conspired to force them out of business.
The case was tried before a jury, and the jury awarded the Davises $23,192. All of *Page 851 
the defendants then moved for a judgment notwithstanding the verdict, or in the alternative, for a new trial. The trial judge denied the motions. It is from the denial of these motions that the defendants appeal.
Our rule of review of a denial of a motion for J.N.O.V. is clear. "A motion for J.N.O.V. should be denied if there is any conflict in the evidence for the jury to resolve, and the existence of such a conflict is to be determined by the scintilla rule." Handley v. City of Birmingham, 475 So.2d 1185,1186 (Ala. 1985). Our rule of review of a jury verdict is also clear. A jury verdict will be presumed correct and will not be disturbed by this Court unless it is plainly erroneous or manifestly unjust. Howard v. Crowder, 496 So.2d 31, 34 (Ala. 1986). The presumption of correctness is strengthened when the trial court denies the motion for a new trial. Id.
In this case, the trial judge issued the following order denying the defendants' motions:
 "The court has carefully considered the motions of the defendants seeking judgment notwithstanding the verdict or new trial and the evidence submitted to the jury and although not fully in agreement with such verdict, is of the opinion that the action was properly submitted to the jury and that the verdict is supported by such evidence; it is therefore adjudged that the separate and several motions of the defendants should be and are hereby denied; the clerk is directed to supply a copy of this order to the attorneys of record."
Alabama recognizes a cause of action for intentional interference with business or contractual relations. LowderRealty, Inc. v. Odom, 495 So.2d 23, 25 (Ala. 1986). This tort has four elements: 1) the existence of a contract or business relation; 2) defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; and 4) damage to the plaintiff as a result of the defendant's interference. Alabama also recognizes an affirmative defense of justification. Id. There is no dispute that a business or contractual relationship existed between the plaintiffs and Cooper Oil, and there is no dispute that such a relationship existed between the plaintiffs and Hazel. It is also conceded that all parties were aware of these arrangements.
The defendants' main argument is that they did not interfere with any relationships except those to which they were parties.
They say that a party to a relation cannot be held liable for interference with that relation, citing Harrell v. ReynoldsMetals Co., 495 So.2d 1381, 1388 (Ala. 1986). Specifically, Hazel argues that she had a legal right to terminate the lease arrangement she had with the Davises, and that she, therefore, cannot be held liable in this action. Smith and Cooper Oil also argue that they had a legal right to lock the pumps and cease doing business with the Davises without notice. Similarly, Neal argues that because Hazel and Smith did only what they had a legal right to do, he cannot be held liable.
The Davises argued, and the jury apparently agreed, that Hazel had interfered with the relationship between the Davises and Cooper Oil and that Cooper Oil, through its agent, Paul Smith, had interfered with the relationship between the Davises and Hazel. The jury also apparently believed that Neal had interfered with one or both of these relationships. We now turn to an examination of the claims against each of the defendants.
First, we turn to the claims against Paul Smith (and because he was its agent, the claims against Cooper Oil). The existence of a conspiracy must often be inferentially and circumstantially derived from the character of the acts done, the relation of the parties, and other facts and circumstances suggestive of concerted action. O'Dell v. State, 270 Ala. 236,240, 117 So.2d 164, 168 (1959).
The evidence in this case showed that the Davises did not owe Cooper Oil any money when Smith locked the pumps for the second time. The jury could have inferred that Smith took this action to facilitate *Page 852 
Hazel's eviction of the Davises. It is not disputed that Smith first suggested the idea of eviction to Hazel, talked to her about it, and contacted his attorney to proceed with the eviction on her behalf. The jury could also have inferred that Smith took this action because the Davises had threatened to change gasoline suppliers. Under these facts, we hold that the jury could have found, and it apparently did find, that Smith knew about the Fossett/Davis arrangement, and intentionally and without justification interfered with it to the plaintiffs' detriment. The judgment as to Paul Smith and Cooper Oil Company is, therefore, due to be affirmed.
Next, we turn the plaintiffs' claim that Neal interfered with the two business relationships. Although we agree with Neal's contention that it is the underlying wrong, and not the conspiracy itself, that furnishes a cause of action for conspiracy, O'Dell, supra, in this case we find sufficient evidence from which the jury could have properly found an underlying wrong. It was Neal who originally initiated discussions about buying the business. Thomas Davis, Bobby Davis's father, testified that after the pumps were locked up, Smith told him that Neal was going to get the business, that Hazel wanted Neal in the business and he was going to get it one way or another. Bobby Davis testified that Neal told him that if he (Davis) refused to sell he would have Paul Smith kick him out. Neal had agreed to keep Smith and Cooper Oil as the gasoline supplier when he got the business. Neal did begin operating a business in the store building after the Davises left and continued to buy gasoline from Cooper Oil.
Neal was Hazel's "favorite nephew" and the one who "took care of her." In addition, the evidence showed that Neal had told Hazel he wanted to enter the business and that she had said that if he wanted the store she wanted him to have it. The jury could have properly inferred that Neal had interfered with the lease arrangement between Hazel and the Davises so that he could go into business in the store building. The jury could have properly inferred that Neal had interfered with either or both of the relationships here in question, and the judgment of the trial court as to Neal is therefore due to be affirmed.
Finally, we turn to the allegations that Hazel interfered in the relationship between Cooper Oil and the Davises. Hazel wanted Neal to run the business. She talked extensively with Smith, and he volunteered to have his attorney begin eviction proceedings for her. There is no question, however, that Hazel had a legal right to terminate the lease she had with the Davises and that if she chose to evict them she could legally do so.
Therefore, for the plaintiffs to recover against Hazel, they would have to show that she interfered in the Davis/Cooper Oil relationship. No evidence of such an interference was shown.
 "We acknowledge that a great quantum of detail may not be required to prove the formation of a conspiracy, and that because of its secretive nature proof of a conspiracy must often be inferentially and circumstantially derived from the character of the act done, but a plaintiff is not relieved of the burden of supplying at least sufficient evidence from which the factfinder can infer that a conspiracy existed."
Scott v. Commonwealth Land Title Ins. Co., 518 So.2d 102, 103
(Ala. 1987).
The mere fact that Hazel talked with Smith and that he had his attorney begin the eviction proceedings does not present any evidence that she asked Smith to cut off the Davises' gasoline supply. We find no other evidence in the record that Hazel had anything to do with Cooper Oil's decisions regarding the Davises. Her motion for J.N.O.V. was therefore due to be granted. The judgment against her is due to be reversed, and a judgment is hereby rendered in her favor.
We do note that much of the evidence in this case was in dispute and that much of the testimony was contradicted by other testimony; in such a case, the jury is free to believe or not to believe the witnesses. Roberson v. Ammons, 477 So.2d 957
(Ala. 1985). However, this does not mean that a *Page 853 
jury is free to base its decision on speculation or conjecture.Clark v. Smith, 292 Ala. 617, 623, 299 So.2d 226, 231 (1974).
The defendants contend that the jury had no basis for its damages award. Although we cannot precisely calculate how the jury arrived at the figure of $23,192, there was testimony that the value of the business was from $19,000 to over $27,000 and that the plaintiffs received from $4,000 to $7,000 from the sale of fixtures and inventory, minus storage costs. In the face of such a conflict and a range of figures, we cannot say the jury's verdict was not supported by the evidence.
86-1235 REVERSED AND JUDGMENT RENDERED.
86-1236 AFFIRMED.
86-1237 AFFIRMED.
86-1295 AFFIRMED.
TORBERT, C.J., and ALMON, BEATTY and HOUSTON, JJ., concur.