ON APPLICATION FOR REHEARING
MADDOX, Justice.
The opinion in this case dated October 26, 1990, is withdrawn, and the following opinion is substituted therefor.
George W. and Mary Jo Kroner, husband and wife, sued for a declaratory judgment, requesting the trial court to resolve a dispute with Charles and Georgia Carol Horton, owners of adjoining property, concerning the ownership of a strip of land. On this strip of land, adjacent to the Kroners’ property, was a dirt road that provided access to the Hortons’ property. The Hor-tons claimed ownership of the strip of land through adverse possession, based on their continued use of the dirt road, and the location of a certain fence line. The trial court determined that the description in the Kroners’ deed included the disputed strip of land and it found that the Hortons had failed to prove ownership by adverse possession; it declared that the Kroners owned the land, in fee simple, subject only *1028 to a private easement to the Hortons, their heirs, and assigns, for ingress to and egress from their property.
The Hortons appealed, maintaining that the trial court erred in determining that they had failed to acquire ownership of the land through adverse possession. The Kroners cross-appealed, arguing that the trial court erred by implicitly forbidding them to place a gate across the dirt road.
The trial court based its findings on ore tenus evidence, and, thus, its findings are presumed correct and will not be disturbed on appeal if supported by the evidence or by any reasonable inferences therefrom, unless they are plainly and palpably erroneous or manifestly unjust. Saunders v. Florence Enameling Co., 540 So.2d 651, 652 (Ala.1988). When ore tenus evidence is presented, “the trial court’s judgment ... is presumed correct and need only be supported by credible evidence,” and this presumption “is particularly strong in boundary line disputes and adverse possession cases.” Bell v. Jackson, 530 So.2d 42, 44 (Ala.1988).
The issues on appeal are: (1) whether the trial court properly determined that the Kroners owned the property in dispute; 2) whether the trial court properly determined the location of the Kroner/Horton boundary line; 3) whether the Hortons suffered damage from the Kroners’ refusal to allow telephone lines to be buried along the dirt road; and (4) whether the trial court’s amended judgment forbids the Kroners from erecting a gate across the dirt road.
In resolving the initial dispute over the ownership of the land, the trial court determined that the Kroners possessed record title to the property. This ruling is amply supported by the record. The trial court examined the deeds of the parties and stated in its October 23, 1989, amended judgment:
“8. The deeds to the plaintiffs, George W. Kroner and Mary Jo Kroner, included the dirt roadway whereas the deeds to the defendants, Charles Horton, Jr. and Georgia Carol Horton, did not encompass nor include the dirt roadway.”
The burden rests upon the Hortons to prove certain elements in establishing adverse possession. That burden is a heavy one. The Hortons must show by clear and convincing evidence that their possession has been actual, hostile, open, notorious, exclusive, and continuous for the statutory period. Tidwell v. Strickler, 457 So.2d 365 (Ala.1984). Rogers v. Moore, 527 So.2d 122, 124 (Ala.1988). The trial court found that the Hortons had not established the elements of adverse possession. This finding is adequately supported by the record and will not be disturbed on appeal.
The second issue involves a dispute over the line dividing the Hortons’ property and the Kroners’ property. The Hortons cite Brantley v. Helton, 224 Ala. 93, 139 So. 283 (1932), asserting that the trial court inappropriately determined the boundary line by adhering to the description in the Kroners’ deed rather than setting it along an old fence line that the Hortons say separated the property. In Brantley, the party claiming by adverse possession had erected a fence on the adjoining landowner’s property, and his action in doing so was hostile and adverse to the adjoining landowner. There, this Court found that the party erecting the fence had title to the disputed land, stating, “When the parties agree upon the location of a line fence, or one of them proceeds to inclose his property, and erects a fence intended as a line fence, [and] holds actual and exclusive possession to it as such, his possession is adverse, and, if continued for ten years, ripens into title.” 224 Ala. at 96, 139 So. at 285.
Here, the trial court determined that the Kroners’ predecessor in title had placed the fence on his own property and that the fence was on the Kroners’ side of the boundary line. Unlike the party claiming by adverse possession in Brantley, the Hortons did not erect the fence nor did they commit any other act of adverse possession. Furthermore, the evidence reveals that the Kroners never recognized the fence, which is now dilapidated, as the boundary line and never agreed with the Hortons that the fence represented such a *1029 boundary; consequently, the trial court could have found that the Hortons’ use of the property was strictly permissive. Thus, the trial court determined that the boundary line described in the Kroners’ deed controlled and that the fence line did not represent the boundary. This ruling by the trial court is amply supported by the evidence.
The third issue presented is whether the trial court correctly determined that the Hortons were not entitled to damages as a result of the Kroners’ refusal to allow the installation of telephone lines along the dirt road. The Hortons cite M & M Investment Co. v. Regency Oaks Apartments, 517 So.2d 591, 596 (Ala.1987), for the proposition that “the right of easement carries with it the right of a utility company to construct and maintain its facilities upon and over the property.” That case stated, however, that this right exists “unless the exercise of this right is so arbitrary as to unnecessarily interfere with the owner’s right of reasonable use of his own property.” 517 So.2d at 596.
The Kroners contend that burying the cable along the dirt road would result in erosion. Moreover, the trial court found that the Kroners did not refuse the Hor-tons access to the utility. Rather, by erecting a single telephone pole between the Kroners’ property and the Hortons’ property, the telephone company was able to utilize existing telephone lines to provide service to the Hortons. As the trial court correctly determined, the Kroners’ decision against burying cable along the dirt road neither prevented the Hortons from receiving telephone service nor caused the Hor-tons any damage. The trial court’s determination is adequately supported by the evidence.
The issue presented by the Kroners on cross-appeal is whether they may erect a gate across the dirt road. The trial court’s judgment of June 30, 1989, allowed the Kroners reasonable control of the easement “by the installation of fencing and a gate.” However, the trial court’s October 23, 1989, amended judgment simply states that “neither of the parties ... shall unreasonably interfere with the other party’s use of the easement.” (Emphasis added.) The Kroners believe that the change of language implies that they may not erect a gate.
In Simpson v. Harbin, 447 So.2d 189 (Ala.1984), this Court addressed facts very similar to those presented here. Simpson, Harbin’s adjoining property owner, held a private easement over the road that led to his property. After the trial court ordered Harbin to remove all obstructions from the road, Harbin constructed two gates and provided Simpson with keys. The trial court found that the gates were not an unreasonable interference or obstruction with Simpson's use and enjoyment of his easement. This Court affirmed and quoted from Self v. Hane, 262 Ala. 446, 448, 79 So.2d 549, 551 (1955):
“ ‘[T]he mere fact that complainant has a right of way by claim of necessity does not of itself mean that respondent cannot establish gates across it where it enters and leaves his property. It is a question of reasonableness under all the circumstances. [Citations omitted.]’ ”
447 So.2d at 191.
There was evidence in this case that, without gates or another reasonable deterrent, the general public is able to operate motorcycles and other recreational vehicles on the dirt road, thereby creating a dangerous environment for the Kroner family. The trial court made it clear that the Hor-tons’ interest in this dirt road is limited to a private, exclusive easement to the Hor-tons, their heirs, and assigns.[1] The trial *1030 court, in its order of June 30, 1989, had determined that the easement “may be reasonably controlled [by the Kroners] as to ingress and egress ... by the installation of fencing and a gate on [their] property,” but in the amended judgment the trial court took out any reference to a fence or gate and substituted the language that is quoted in footnote 1. After reviewing the record in this case, especially that portion of the record containing the arguments of counsel on the motion for a new trial, in which the Hortons contended that “[allowing the Kroners to put a fence across this easement is certainly not anything reasonable.” [2] In view of the arguments made by counsel on the motion for new trial, and in view of the fact that the trial judge deleted that portion of his judgment that permitted the Kroners to install a gate across the easement, we conclude that the trial judge, in the amended judgment dated October 23, 1989, determined that the installation of a gate across the easement would not be reasonable under the circumstances. His amended order mandates that there be no unreasonable interference by either side, but the trial court, hearing the evidence without a jury, did not expressly determine what would specifically violate his mandate. We must conclude that, on the motion for new trial, he did determine, because of the deletion from the first order of the language that would have permitted the Kroners’ installation of a gate across the easement, that a gate across the road would indeed unreasonably interfere with the Hortons’ use of the roadway. Although the trial judge made no express determination concerning when and under what circumstances actions by either of the parties would unreasonably interfere with the use and enjoyment of the easement, we must assume that the trial judge applied the rule set out in Self v. Hane, supra, that “[i]t is a question of reasonableness under all the circumstances.” Because the order was directed to both sides to the litigation, we must assume that the trial judge intended the users of the easement to only use it only as a private, not a public, way, and that his deletion of the portion of his earlier judgment authorizing the Kroners to install a gate should be construed as prohibiting the Kroners from erecting a gate across the easement if it continues to be used only as a private easement.
For the foregoing reasons, the judgment of the trial court is affirmed.
89-0283 APPLICATION GRANTED; ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
89-0525 ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.

. In his amended judgment, the trial judge concluded:
"[George W. Kroner and Mary Jo Kroner] are declared to be the owners in fee simple of the property set forth [in the complaint], subject to the easement for ingress and egress across' the dirt road existent on the Eastern portion of [their] property leading to the property of the defendants, Charles Horton, Jr. and Georgia Carol Horton, which easement shall be a private easement to the property presently owned by the defendants, Charles Horton, Jr. and Georgia Carol Horton, for access to their property, and which easement inures to the benefit of defendants ... their heirs and assigns, with it further provided that neither of *1030 the parties to this decree shall unreasonably interfere with the other parties’ use of the easement for means of ingress and egress to their property.”

. Letter brief to the Honorable Michael Zoghby, the trial judge, dated September 20, 1989, from Thomas M. Galloway, the Hortons’ counsel.