The parties present us with several issues concerning the Alabama Trade Secrets Act, Ala. Code 1975, § 8-27-1 et seq.: (1) whether the customer lists and spreadsheet software data program developed by the plaintiff were trade secrets as defined by the Trade Secrets Act; (2) whether the defendants could be restricted by the Trade Secrets Act or otherwise from interfering with existing contract relationships of the plaintiff because the two parties did not enter into a covenant not to compete; (3) whether the defendants could be restricted by the Trade Secrets Act from contacting clients targeted by the plaintiff; and (4) whether the defendants could be restricted by the Trade Secrets Act or otherwise from interfering with the prospective advantage of the plaintiff in the eight grant applications that were produced by the plaintiff.
The essential facts of the case are as follows. The plaintiff, Public Systems, Inc., is a private, closely held corporation that specializes in providing financial and technical assistance to public and private agencies in Alabama and Tennessee to obtain financing for projects for public purposes, including water systems, sewer systems, and government housing. After the clients obtain financing, PSI assists them in administering and carrying out the projects in accordance with the various state and federal regulations.
The defendants, Herman Kenneth Towry and Susan Dawn Adams, are former employees of PSI. Towry worked as a consultant at PSI for approximately nine years. When he voluntarily terminated his employment, Towry was serving as vice-president of operations. Adams worked at PSI as a staff consultant for approximately one year, at which point she was terminated by PSI. As part of their duties, both Towry and Adams helped prepare grant applications for PSI, and when those grants were funded, they helped to supervise and administer the grant projects. Upon the cessation of their employment with PSI, Towry and Adams formed a company that would directly compete with PSI.
PSI brought this action against the defendants under the provisions of § 8-27-1, alleging that after their termination from PSI, Towry and Adams misappropriated the confidential information and trade secrets of PSI by using customer lists, confidential pricing information, techniques, and processes. PSI also alleged that Towry and Adams had tortiously interfered with the business contracts of PSI and its clients. The complaint specifically alleged:
 "Towry and Adams, by improper means, illegally, without authority and without the privilege to do so, performed the following acts:
"a. Misappropriated trade secrets of PSI;
 "b. The misappropriated trade secrets of PSI were used and intended for use in the trade or business of PSI;
 "c. Made or retained copies of lists of clients of PSI;
 "d. Made or retained copies of grant applications of PSI; *Page 971 
 "e. Made or retained copies of forms developed and used by PSI;
 "f. Made or retained copies of computer printouts of information developed by PSI;
 "g. Made or retained copies of project financial records."
PSI also requested that the trial court issue a temporary restraining order and a preliminary injunction, seeking to enjoin the defendants from contacting certain clients of PSI, from disseminating the alleged trade secrets, from hiring PSI's employees, and from retaining documents that allegedly belonged to PSI.
The trial court denied the motion, noting the following:
 "[T]he plaintiff and defendants did not have a contract containing any restriction on the defendants' right to compete. In the absence of such an agreement, this Court cannot restrict the defendants in competing with the plaintiff. . . . With respect to the dissemination of information which the plaintiff claims is a 'trade secret,' this claim is based on the plaintiff's contention that information which it gathers from public sources and programs into a commercially available software program constitutes a 'trade secret.' This Court cannot agree. The information and the software program are readily available to the public."
This is an interlocutory appeal from the trial court's denial of PSI's motion for a temporary restraining order and preliminary injunction. Initially, we define our scope of review in an appeal from an order denying a preliminary injunction. As stated in Alabama Educ. Ass'n v. Board ofTrustees, 374 So.2d 258, 260 (Ala. 1979):
 "Wide discretion is accorded the trial judge hearing the application and deciding whether to grant a temporary injunction and his action will not be disturbed on appeal unless he abuses his discretion. . . . His discretion is a legal or judicial one subject to review for abuse or improper exercise, as where there has been a violation of some established rule of law or principle of equity, or a clear misapprehension of the controlling law."
 SPREADSHEET SOFTWARE DATA PROGRAM
PSI contends that its spreadsheet software data program is a "trade secret" as defined in the Trade Secrets Act. That Act defines a "trade secret" to mean information that:
 "(a) Is used or intended for use in a trade or business;
 "(b) Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
 "(c) Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
 "(d) Cannot be readily ascertained or derived from publicly available information;
 "(e) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and
"(f) Has significant economic value."
See Ala. Code 1975, § 8-27-2(1).
The burden is on the one asserting the trade secret, here PSI, to show that it is included or embodied in the categories listed in § 8-27-2(1). Towry and Adams concede that the program is included in the first two categories; clearly the plaintiff uses the information contained in the spreadsheet in its business, and the information is embodied in a spreadsheet software data program. They argue, however, that none of the last four categories applies; thus, they argue, the information cannot be afforded the protection of a trade secret.
The third requirement for trade secret protection is that the information "[i]s not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret." An examination of PSI's spreadsheet software data program reveals that the information the plaintiff seeks to protect is readily ascertainable or derivable from information that is publicly available. According to trial testimony, the spreadsheet began as an off-the-shelf computer program "available to *Page 972 
anybody who wants to go down to the software store and buy it." The program produces a screen of rows and columns and contains various command keystrokes to allow the user to modify the spreadsheet to insert blocks of information. The program also has the capability to perform mathematical calculations. There is no evidence in the record, and apparently no claim, that PSI made any changes to the technical aspects of the program; therefore, there is no trade secret protection in the program itself.[1] As stated in the comments to § 8-27-2, "the trade secret is not the object, process, etc., in which a trade secret is embodied, but is specific information."
All of the information compiled and embodied in PSI's spreadsheet data program is available to the public. The spreadsheet consists of a cover sheet, a key to the legends, a map and a multipage graph. The map is a reprint of an Alabama Department of Economic and Community Affairs ("ADECA") map that shows the counties of Alabama and the location of the regional planning and development commissions. PSI admits that the map is a state document with general dissemination.
The succeeding pages are in graph form. The first two columns contain the names of the cities and counties of Alabama. The third column, headed "REG.PLNCOM" shows the regional planning commission under whose jurisdiction each city and each county operates. The next columns, "1980 populations," "percent minority population," and "percent LMI [low and moderate income]," all contain information taken from the 1980 census.
The next two columns include a "community need factor" and a "DISCTYSTA" (distress county status), both figures were obtained from ADECA, are periodically published by ADECA, and are available to anyone who requests the information. The next column shows the "Fiscal Year 1989 Waste Water Treatment System Priority" as established by the Alabama Department of Environmental Management. This information is also generally available to the public.
The final columns contain a complete history of grant applications submitted by local governments. According to PSI, this information is obtained from ADECA and is information that one could obtain "if they knew what they were asking for."
Closely aligned with the requirements of (c), above, is the requirement of § 8-27-2(1)(d), that the information "cannot be readily ascertained or derived from publicly available information." What constitutes a trade secret is a question of fact for the trial court. Drill Parts Service Co. v. Joy Mfg.Co., 439 So.2d 43 (Ala. 1983). In this case, the trial court found that the software data program was not a "trade secret," based upon the fact that the information and the spreadsheet software were both "readily available" to the public. In cases where the evidence is presented ore tenus to the court and without a jury, the court's findings of fact are presumed to be correct and will not be set aside except for plain and palpable abuse of discretion. Chism v. Hicks, 423 So.2d 143 (Ala. 1982);Mac Pon Co. v. Vinsant Painting Decorating Co., 423 So.2d 216
(Ala. 1982).
As stated in the comments to § 8-27-2, "[p]aragraph (d) is intended to disallow from trade secret protection information that is readily available and does not require substantial research investment to obtain." All of the information contained in the spreadsheet is readily available public information. While PSI claims that the spreadsheet took several years to develop, it appears that the development process would consist mainly of determining what information to obtain. We have examined *Page 973 
the record, and, considering our scope of review, we conclude that PSI has failed to show sufficient evidence that the trial court abused its discretion in not finding that the process of requesting that information and then plugging it into the computer grid would require a substantial research investment.
Saunders v. Florence Enameling Co., 540 So.2d 651 (Ala. 1988), dealt with a claim that a process of coating aluminum pipe was a trade secret. That case involved a process, rather than data, but the process was one that provided a superior product at a reduced cost. In that circumstance, it was the process itself that was the secret. In the present case, however, there was nothing secret about the process of getting the information. Consequently, PSI's claim that the display of publicly known information should be protected by the Trade Secrets Act has no merit. The trial court correctly found that the information was readily ascertainable or was derivable from publicly available sources and thus did not fall within the protected categories under the statute. Consequently, the trial court's ruling that the spreadsheet was not a trade secret is affirmed.
 CUSTOMER LIST
PSI also contends that its customer list should be granted the court's protection as a trade secret. It is undisputed, as a general proposition of law, that customer lists may, in proper circumstances, be afforded the protection of a trade secret. Birmingham Television Corp. v. DeRamus, 502 So.2d 761
(Ala.Civ.App. 1986). The courts addressing this issue have required that the lists be something more than a list of readily ascertainable potential clients. Id.; Affiliated PaperCompanies v. Hughes, 667 F. Supp. 1436 (N.D.Ala. 1987). Those lists that have been afforded protection as trade secrets have contained specific information about customers, for example, their buying habits. See Zoecon Indus. v. American Stockman TagCo., 713 F.2d 1174 (5th Cir. 1983). Additionally, in those cases, the information was treated by the claimant as secret. See Calhoun v. Brendle, Inc., 502 So.2d 689 (Ala. 1986). PSI admits that it distributes to prospective clients a booklet that contains a listing of its clients. It is axiomatic that once made public, the customer list has no claim to trade secret protection.
We hold that the trial court did not abuse its discretion in denying the injunctive relief based upon its finding that the client list was not a trade secret.
 INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS
The trial court denied PSI's request to enjoin Towry and Adams from contacting clients, noting that PSI and the defendants did not have a contract containing any restriction on the defendants' right to compete. The court cited Daughtryv. Capital Gas Co., 285 Ala. 89, 94, 229 So.2d 480, 485 (1969), wherein this Court agreed with the proposition that "The majority, and the better considered, of the cases, support the proposition that one who is in no sense a party to a covenant not to engage in a competing business cannot properly be enjoined from engaging in such business." (Quoting Annot., 94 A.L.R. 345 (1935).)
In its brief, PSI contends that this case falls within the ambit of the tort of interference with business or contractual relations. In Fossett v. Davis, 531 So.2d 849, 851 (Ala. 1988), this Court recited the four elements of this tort:
 "1) the existence of a contract or business relation; 2) defendant's knowledge of the contract or business relation; 3) intentional interference by the defendant with the contract or business relation; and 4) damage to the plaintiff as a result of the defendant's interference."
Although a party might be able to show a competitor's wrongful interference with a contractual relationship, we conclude that PSI has failed to provide evidence from which the factfinder could infer that a wrongful interference had taken place here and that PSI had suffered damage as a result of that interference. Absent such evidence, we must hold that the trial court did not err in holding that Towry and Adams had a right to conduct a rival *Page 974 
business and to deal with former clients who, because of past services, may have elected to patronize them. See Joseph v.Hopkins, 276 Ala. 18, 158 So.2d 660 (1963).
Because we hold that Towry and Adams have a right to conduct a competing business, we pretermit any discussion of issues three and four.
In summary, there is no merit to PSI's claim that the spreadsheet data program or the client list are trade secrets entitled to protection under the Alabama Trade Secrets Act. Further, absent a covenant not to compete, Towry and Adams have a right to conduct a competing business. For the foregoing reasons, the trial court's judgment denying the preliminary injunction is affirmed.
AFFIRMED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and INGRAM, JJ., concur.
[1] We have recognized that a computer program, under appropriate circumstances, can be the subject of conversion. See NationalSurety Corp. v. Applied Systems, Inc., 418 So.2d 847
(Ala. 1982). In that same case, we also noted that there are certain property interests to be protected in computer programs. National Surety involved proprietary program packages developed primarily for sale; the essential ingredient of the package concept is the means of protecting the program itself, because, without protection, it would cease to be a commodity. In the present case, however, there was no claim of conversion. Furthermore, this case clearly does not involve the development of a program.